**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

————————————————————————————

RONALD EDWARD WILLIAMS,

                             Plaintiff,

        v.                                       No. 09-CV-1298
                                              (FJS/CFH)

KEITH DUBRAY, Acting Director, Special Housing,

                         Defendant.[1]

————————————————————————————

**APPEARANCES:**                           **OF COUNSEL:**

RONALD EDWARD WILLIAMS
Plaintiff Pro Se
389737
Broome County Correctional Facility
Post Office Box 2047
Binghamton, New York 13902

HON. ERIC T. SCHNEIDERMAN            CHARLES J. QUACKENBUSH, ESQ.
Attorney General for the                  Assistant Attorney General
  State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[2]

    Plaintiff pro se Ronald Williams ("Williams"), an inmate in the custody of the New York

State Department of Correctional and Community Services ("DOCCS"), brings this action

against Dubray, a DOCCS employee, contending Dubray violated his constitutional rights

————————————————

     [1] By a Memorandum-Decision and Order dated July 27, 2010, three other
defendants were dismissed from the present actions.  Dkt. No. 12.

     [2]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

under the Fourteenth Amendment.  Am. Compl. (Dkt. No. 9).  Presently pending is

defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Dkt. No. 37.

Williams opposes the motion.  Dkt. No. 41.  For the following reasons it is recommended

that defendant's motion be granted.


## I. Background

The facts are related herein in the light most favorable to Williams as the non-moving

party.  See subsection II(A) infra.  The facts and procedural history of this case are set forth

in the Report-Recommendation and Order filed July 13, 2011, familiarity with which is

assumed.  Dkt. No. 28.  As relevant here, defendant's earlier motion to dismiss was denied,

leaving the present claims for due process claims against defendant Dubray as the only

allegations remaining in the complaint.  Id.  Discussion will be limited to that claim.

On April 10, 2007, while Williams was incarcerated at Camp Gabriel Correctional Facility

("Camp Gabriel"), he received a tax refund check for $327,456.  Dkt. No. 9 at 16; Dubray

Decl. (Dkt. No. 37-3) ¶ 3; Dkt. No. 37-4 at 5 (copy of check issued on April 6, 2007 for

$327,456.04).  "This aroused the attention of facility mail room staff, who alerted the

DOCCS Inspector General.  Upon inquiry to the IRS Fraud Detection Center, the DOCCS

was informed that the check had been fraudulently requested and inadvertently issued."

Dubray Decl. ¶ 4; see also Dkt. No. 9 at 16 ("The check was . . . sent back to the IRS Fraud

Detection Center and determined to be fraudulent.").  On April 19, 2007, Williams was

transferred from Camp Gabriel to Bare Hill Correctional Facility ("Bare Hill").  Williams Aff.

(Dkt. No. 41 at 4-12) ¶ 1. On April 20, 2007, third party DOCCS Investigator Crowley

questioned Williams.  Dubray Decl. ¶ 6; Williams Aff. ¶¶ 2-10.  During the conversation with

2

Crowley, Williams explained that "the refund was the resolution of aforesaid taxes claimed against the Appearance Bond that was posted in his criminal matter . . . ."  Williams Aff. ¶ 7. Williams also contended that he told Crowley he was in touch with the IRS about this issue, in attempts to legitimize the transactions Williams explained that he had never been informed that there was a problem with the refund which he was seeking.  Williams Aff. ¶¶ 9-10.

On April 22, 2007, Williams received a misbehavior report authored by Crowley contending that he had committed bribery, extortion, and solicitation.  Am. Compl. ¶ 6; Williams Aff. ¶ 12.  Specifically, the misbehavior report stated that Williams claimed to have "an exemption account[, which] is an open line of credit . . . .," which "the District Attorney of Erie County withdrew $ 500,000 out of . . . .," resulting in Williams' request for a tax refund from the federal government.  Dkt. No. 9 at 16; Dkt. No. 37-4 at 2.

On April 24, 2007, a disciplinary hearing was conducted by third party Drown regarding these charges.  Am. Compl. ¶ 6; Dubray Decl. ¶ 8.  During the hearing, Williams pled not guilty to all charges.  Dkt. No. 37-5 at 3; Williams Aff. ¶ 14.  Williams failed to call any witnesses or produce any evidence.  Dkt. No. 37-5 at 3.  Williams believed that calling witnesses and presenting evidence was unnecessary since he had done nothing wrong. Williams Aff. ¶ 17.  Moreover, Williams contends that the documentation he received from the IRS, supposedly legitimizing his actions, was unable to be shown because Crowley had taken it.  Williams Aff. ¶ 18.  Williams failed to further articulate the sum and substance of this documentation or how it proved that his efforts were not fraudulent.

During the disciplinary hearing, Williams described his communications with the IRS, explaining that he had been in touch with them in September 2006, prior to his

incarceration, and that he had updated his address with the IRS when he arrived to Camp Gabriels.  Dkt. No. 37-5 at 4-5; see also Dkt. No. 41 at 14-19 (letters sent to the IRS reflecting Williams' change of address to Camp Gabriels).  Williams also admitted that there was no such thing as an exemption account.  Dkt. No. 37-5 at 5 ("[Q] There is no such thing as an exemption account, is there, Sir? [A] Umm, Umm, no."); but see Williams Aff. ¶ 20 (explaining that he answered "no" to the questions about the exemption account despite Drown's attempts "to coerce [him] into answering 'yes' . . . to cooperate with their theory of being illegal.").  Drown found Williams not guilty of the bribery or extortion charges.  Dkt. No. 37-5 at 5.  However, Drown found Williams guilty of solicitation based upon the misbehavior report, IRS disbursement form, and Williams' testimony in which he essentially admitted that he requested a fraudulent refund based on a non-existent account and pursued such fraud by continuing to forward his mailing address to the IRS upon incarceration.  Dkt. No. 37-4 at 4.  Consequently, Williams was given a disciplinary disposition of sixteen months confinement in the Special Housing Unit ("SHU")[3] as well as a sixteen month loss of privileges, commissary, and phone.  Am. Compl. ¶ 6; Dkt. No. 37-4 at 1-2.

Williams appealed the hearing decision.  Am. Compl. ¶ 6; Dkt. No. 9 at 18; Williams Aff. ¶ 24.  Williams contended that there was insufficient evidence to prove a fraudulent act on his behalf.  Dkt. No. 9 at 18.  Defendant Dubray reviewed and decided the appeal.  Dubray Decl. ¶ 12.  Dubray explained that during the appeal process he reviewed the Appeal

---

[3]SHUs exist in all maximum and certain medium security facilities.  The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ."  N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b) (2007).  Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  Id. at pt. 301.

Packet, which contained the relevant evidence relied upon by Drown, Williams' appeal form, and Williams' disciplinary history.  Dubray Decl. ¶¶ 13-15.[4]  On June 28, 2007, the appeal was affirmed by defendant Dubray, however the disposition was modified from sixteen to six months confinement and loss of privileges given Williams' lack of a prior disciplinary history.  Am. Compl. ¶ 7; Dkt. No. 9 at 20-21; Dubray Decl. ¶ 15; Williams Aff. ¶ 25.   Williams contends that Dubray should have reversed the hearing officer's findings and disposition because Williams was provided with a constitutionally infirm disciplinary hearing.  Am. Compl. ¶¶ 7, 11; see also Williams Aff. ¶ 27 (specifically contending that the hearing record was insufficient because it did not contain a sworn statement from Crowley to substantiate the misbehavior report).

On October 6, 2011, a superceding indictment was filed in this judicial district against Williams alleging that he made nine false claims for refunds to the IRS between April 2007 and April 2009, eight of which were made for the issuance of refunds to himself.  Dkt. No. 42-2.  On January 26, 2012, a jury convicted Williams of all the federal felony charges for the IRS refund scams.  Dkt. No. 42-1 at 9.

## II. Discussion

Williams contends his Fourteenth Amendment rights were violated when he was given a disciplinary disposition that was not supported by sufficient evidence.  Defendant seeks dismissal because (1) Williams' constitutional claim is meritless and (2) defendant also

---

[4] While Dubray did not request any audio recording of the testimony, he did review the transcript, which provided sufficient information upon which to base his decision to affirm the disposition.  Dubray Decl. ¶¶ 16-19.

contends that he is entitled to qualified immunity.

## A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185,

6

191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)).   However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.


### B.  Due Process[5]

While inmates are not given "the full panoply of [due process] rights," they are still afforded procedural process.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  A prisoner is "entitled to advance written notice . . . ; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition including the evidence relied upon and the reasons for the disciplinary actions taken."  Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (citations omitted).

Williams contends that there was not sufficient evidence to support his disciplinary disposition, thus Dubray should have reversed the findings.  The Supreme Court held "that the requirements of due process are satisfied if some evidence supports the decision by the [hearing officer] . . . " and the Second Circuit has held that the test is whether there was any "'reliable evidence' of the inmate's guilt."  Luna v. Pico, 356 F.3d 481, 487–88 (2d Cir.2004);

---

[5] As determined previously, due to the length Williams' SHU sentence, he successfully established a protected liberty interest for purposes of a motion for summary judgment.  Dkt. No. 28 at 8-9.

see also Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985) ("Requiring a modicum of evidence to support a decision ... will help prevent arbitrary deprivations without threatening institutional interests ...."). Such investigation "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence," Hill, 472 U.S. at 455-56, but it does require some indicia of reliability. Luna, 356 F.3d at 488-89.

In this case, Williams' disposition in supported by reliable evidence. The misbehavior report, outlining the receipt of the fraudulent tax refund and the confirmation that it was fraudulent by the IRS, was made by the officer personally involved in the investigation and questioning of Williams. "There is no evidence of any motive for [Crowley] to implicate [Williams] falsely, nor reason for [Drown or Dubray] to question the credibility of . . . [the misbehavior] report." Creech v. Schoellkoph, 688 F. Supp. 2d 205, 214-15 (W.D.N.Y. 2010). The fact that Crowley did not testify is irrelevant because there was never "any reason to doubt the nature of the evidence already provided." Id. Furthermore, the check for the tax return was included in the paperwork, substantiating the fact that the refund for $327,456 had been issued.

The transcript from the disciplinary hearing also corroborates Drown's disposition. Williams' testimony indicated that he was in constant contact with the IRS and knew that the fund from which he asserted he was owed a refund was non-existent. In his affidavit, Williams contends for the first time that his actual responses were inconsistent with those recorded in the disciplinary hearing transcript. However, the transcript and affidavit proffer identical responses to Drown's question, specifically that Williams answered "no" to the question posed about the existence of the exemption account. Thus, it appears that

Williams responded to the questions in a manner evincing knowledge of a fraud.  Williams has also varied his argument with respect to the source of the money from which he contends he was owed a legitimate return, namely an appearance bond as opposed to an exemption account.  Such inconsistencies in Williams' assertions, proffered in a conclusory and unsupported manner, are insufficient to raise a material question of fact regarding the present case.  Accordingly, defendant's motion should be granted on this ground because the outcome of the disciplinary hearing was supported by some evidence and thus did not represent a violation of Williams' due process rights.[6]

### C. Qualified Immunity

Defendant claims that even if Williams' constitutional claims are substantiated, he is entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights."  Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

---

[6] This conclusion is further supported by Williams' subsequent convictions for filing false tax returns immediately subsequent to the time period relevant to the present motion.

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation.  <u>Aiken</u>, 236 F. Supp. 2d at 230.  Here, the second prong of the inquiry need not be discussed with regard to Williams' claims because, as discussed <u>supra</u>, it has not been shown that defendant violated Williams' constitutional rights.

## III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendant's motion for summary judgment  (Dkt. No. 37) be **GRANTED** as to all claims against Dubray and that the amended complaint be **DISMISSED** with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation."  N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. §636(b)(1)(B)-(C)).  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Small v. Sec'y of HHS</u>, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  September 17, 2012
          Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

10